# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| NORTHSTAR MARINE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 13-0037-WS-C |
| | ) |
| MICHAEL HUFFMAN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on defendants' Motion to Amend Answer (doc. 49). Plaintiff opposes the Motion (*see* doc. 64), which has been briefed and is now ripe for disposition.

**I.     Relevant Background.**

Back on January 24, 2013, plaintiff, Northstar Marine, Inc., filed suit against defendants, Michael Huffman and Huffman Construction, Inc. (collectively, "Huffman"). The Complaint, which was purportedly brought in admiralty, alleged that Northstar had entered into an oral agreement with Huffman in June 2010. (Doc. 1, ¶ 7.) Pursuant to that agreement, the Complaint went on, Northstar introduced and recommended Huffman to the National Response Corporation ("NRC") as an "oil spill clean-up contractor" in connection with the DEEPWATER HORIZON oil spill remediation project, in exchange for which Huffman agreed to pay Northstar a finder's fee of 10% of Huffman's income from that project. (*Id.*, ¶¶ 8-9.) The Complaint alleges that Huffman was selected for the job and ultimately received more than $10 million in payments from NRC, but never paid the finder's fee. (*Id.*, ¶¶ 10-12.) Based on those allegations, Northstar brought claims against Huffman for breach of contract, unjust enrichment, conversion, and fraud/misrepresentation, seeking damages in excess of $1 million. (*Id.* at 3-6.)[1]

---

[1]     Plaintiff predicated federal subject matter jurisdiction on "admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333(1) … inasmuch as it involves and/or pertains to a maritime contract," and alternatively invoked diversity jurisdiction pursuant to 28 U.S.C. § (Continued)

The court file confirms that defendants, represented by retained counsel, filed an Answer (doc. 12) on March 25, 2013. In that pleading, Huffman interposed the following defenses: (i) failure to state a claim upon which relief can be granted; (ii) lack of admiralty / maritime jurisdiction; (iii) lack of personal jurisdiction; and (iv) improper venue. Nothing in the Answer expressed any intention by Huffman to assert affirmative defenses of statute of frauds or failure of consideration.[2]

In the ordinary course of this federal litigation, Magistrate Judge Cassady entered a Rule 16(b) Scheduling Order (doc. 19) on May 14, 2013. The Scheduling Order provided, in relevant part, that "[t]he parties must file any motions for leave to amend the pleadings and to join other parties no later than **June 28, 2013**." (Doc. 19, ¶ 4.)[3] Neither Huffman nor any other party requested leave to amend the pleadings prior to that June 28, 2013 deadline; likewise, no party requested an enlargement of the period for filing motions to amend the pleadings in advance of that court-ordered deadline. In December 2013, the parties jointly requested modification of the Scheduling Order to allow additional time for discovery and dispositive motions; however, they did not seek, and were not granted, reopener of the expired period for moving to amend the pleadings. (*See* docs. 29 & 30.) Subsequent motions for enlargement of scheduling order deadlines pertaining to completion of discovery and submission of dispositive motions were filed in February 2014, May 2014 and June 2014. (*See* docs. 38, 40 & 47.) Such motions were granted, albeit with no change to the deadline for amending pleadings. (*See* docs. 39, 43 & 48.)

---

1332(a), based on allegations that plaintiff and defendants were of diverse citizenship and the amount in controversy exceeded the sum or value of $75,000. (Doc. 1, ¶¶ 1-5.) Without expressing any opinion as to plaintiff's § 1333(1) theory, the Court observes that the exercise of diversity jurisdiction appears proper here.

[2]  For the sake of completeness, the Court notes in passing that Huffman Construction, Inc. filed a Counterclaim (doc. 16) on April 8, 2013, alleging breach of contract by Northstar to the tune of $408,083.45, plus interest, fees and costs. That counterclaim is not germane to the pending Motion to Amend.

[3]  In setting that deadline for motions to amend pleadings, Judge Cassady accommodated the parties' joint written request that they be given "until June 28, 2013 to join additional parties and amend the pleadings." (Doc. 18, ¶ 6.)

As things now stand, the parties have been operating under a discovery cutoff date of June 30, 2014; a dispositive motions deadline of July 3, 2014; and a trial setting of November 2014. Defendants timely filed a motion for summary judgment, as to which briefing is well underway. (*See* docs. 52, 62 & 66.)

On June 25, 2014, a full 362 days after the Scheduling Order deadline for filing motions to amend the pleadings, Huffman filed the Motion to Amend Answer, seeking leave to plead two new affirmative defenses (Statute of Frauds, Failure of Consideration). In that Motion, Huffman articulates no authority for its request, but proceeds on the following grounds: (i) when counsel first became involved, "the Defendants were under a short timeline to file an Answer;" (ii) communication between counsel and clients was rendered "difficult" by "[t]he location of the parties and the nature of Defendant's business;" (iii) this action arises from a "very complicated factual situation;" (iv) unspecified "[r]esearch" reveals that the parties' agreement may be subject to Alabama's Statute of Frauds, contrary to counsel's initial impression; and (v) "discovery has led to facts that support an argument that the Alabama Statute of Frauds does apply and that there may have been a failure of consideration." (Doc. 49, ¶¶ 3-7.) Plaintiff opposes the Motion as untimely and prejudicial. (*See* doc. 64.)

**II. Analysis.**

Although defendants' brief relies on Rule 15(a)(2), Fed.R.Civ.P., and asserts that "leave to amend shall be freely given where justice requires" (doc. 67, at 2), this is not the correct legal standard. The Federal Rules of Civil Procedure are clear that litigation deadlines fixed via scheduling order "may be modified only for good cause and with the judge's consent." Rule 16(b)(4), Fed.R.Civ.P. Where, as here, a request for amendment "comes long after the deadlines for filing motions to amend established in the scheduling orders entered in this case," the movant must "show good cause under Federal Rule of Civil Procedure 16(b)." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1312 (11th Cir. 2009).[4] Accordingly, Huffman's Motion to Amend must be evaluated under Rule 16(b)(4) in the first instance, not the liberal provisions of Rule 15(a)(2). *See Smith v. School Bd. of Orange County*, 487 F.3d 1361, 1367 (11th Cir. 2007) ("despite

---

[4] *See also Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009) ("A plaintiff seeking leave to amend its complaint after the deadline designated in a scheduling order must demonstrate 'good cause' under Fed.R.Civ.P. 16(b).").

Smith's argument on appeal that the district court should have granted his motion to amend his complaint in accordance with the liberal amendment instructions of Rule 15(a), Smith still had to comply with Rule 16(b)'s good cause requirement because he filed his motion to amend … after the court's deadline for such motions"); *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("[B]ecause Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a).").[5]

The "good cause" standard prescribed by Rule 16(b) "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (citation and internal quotation marks omitted).[6] The burden of establishing good cause / diligence rests squarely on the party seeking relief from the scheduling order. *See, e.g., Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3rd Cir. 2010) ("Rule 16(b)(4) focuses on the moving party's burden to show due diligence.").[7]

---

[5] The Eleventh Circuit has explained this principle as follows: "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa*, 133 F.3d at 1419. "Were the law otherwise, scheduling orders would be trivialized to the point of meaninglessness." *Roberson v. BancorpSouth Bank, Inc.*, 2013 WL 4870839, *1 (S.D. Ala. Sept. 12, 2013); *see also Baker v. U.S. Marshal Service*, 2014 WL 2534927, *2 (D.N.J. June 5, 2014) ("Extensions of time without good cause would deprive courts of the ability to effectively manage cases on their overcrowded dockets and would severely impair the utility of Scheduling Orders."); *Rogers v. Hartford Life and Acc. Ins. Co.*, 2012 WL 2395194, *1 n.3 (S.D. Ala. June 22, 2012) ("[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded … Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.") (citation omitted).

[6] *See also Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008) ("To establish good cause, the party seeking the extension must have been diligent."); *Jackson v. Odenat*, --- F. Supp.2d ----, 2014 WL 1202745, *6 (S.D.N.Y. Mar. 24, 2014) ("[t]he touchstone of good cause is the moving party's diligence").

[7] *See also Pittman ex rel. Sykes v. Franklin*, 2008 WL 2521222, *6 n.5 (6th Cir. June 24, 2008) (recognizing movant's "obligation to demonstrate 'good cause' for failing to comply with the district court's scheduling order"); *Benchmark Young Adult School, Inc. v. Launchworks Life Services, LLC*, 2014 WL 3014720, *2 (S.D. Cal. July 3, 2014) ("The party seeking to continue or extend the deadlines bears the burden of proving good cause."); *Baker*, 2014 WL 2534927, at *2 ("The moving party has the burden of demonstrating that despite its (Continued)

In an effort to establish the requisite good cause, Huffman offers several arguments. First, in the Motion to Amend, defendants cite counsel's initial "short timeline to file an Answer" and communication difficulties with their clients. (Doc. 49, ¶ 3.) Those circumstances may explain why the affirmative defenses of Statute of Frauds and Failure of Consideration were omitted from the original Answer filed on March 25, 2013, but they do not support an inference that defendants were unable to recognize the viability of those defenses despite diligence prior to the June 28, 2013 deadline (to which defendants expressly assented) for moving to amend the pleadings. This is not good cause. Second, Huffman alludes to defendants' legal research identifying possible merit to the Statute of Frauds defense (*id.*, ¶ 7), but does not show why such research could not have been performed with diligence prior to the Scheduling Order deadline. Preventable delays in exploring applicable legal principles do not satisfy the Rule 16(b)(4) standard for modifying the Scheduling Order.

Third, the Motion references unspecified "discovery" that might bolster the Statute of Frauds and Failure of Consideration defenses. (*Id.*) In their reply, defendants elaborate as follows:

> "Defendants did not have all of the information providing the basis for the proposed affirmative defenses available to them before the deadline for amending pleadings expired. It was only after depositions were taken in Philadelphia, on January 28 and 29, 2014, and in Long Island, New York, on June 2, 2014, that the facts supporting these defenses were discovered …."

(Doc. 67, at 3-4.) This conclusory showing is inadequate on multiple levels. Defendants do not identify what information surfaced at those January 2014 and June 2014 depositions that they did not have before, much less why they could not with diligence have obtained such information earlier. They do not indicate why they waited so long to take the subject depositions, despite knowledge of the June 2013 deadline for amending pleadings. They proffer no justification for failing to file their motion to amend after the January 2014 depositions, based on information

---

diligence it could not reasonably have met the Scheduling Order deadline."); *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, 2014 WL 1431720, *1 (M.D.N.C. Apr. 14, 2014) ("Appropriately, the burden to justify a departure from the rules set forth in the Court's scheduling order is on the moving party.") (citations and internal marks omitted); *Quinn v. Deutsche Bank Nat'l Trust Co.*, 2014 WL 977632 (S.D. Ala. Mar. 12, 2014) (analyzing movant's "attempt to meet his burden under Rule 16(b)(4)").

gleaned at that time. In short, defendants have not met their burden of demonstrating that, despite their diligent efforts, they were unable to discern the availability of colorable Statute of Frauds and Failure of Consideration defenses until a full year after the relevant Scheduling Order deadline had expired.[8]

Nor can movants overcome this deficiency in proof by redirecting the Court's attention to the issue of prejudice, rather than diligence. (Doc. 67, at 4, 6.) After all, it is well settled that "[d]iligence, not lack of prejudice, is the touchstone of the Rule 16(b)(4) inquiry." *Roberson v. BancorpSouth Bank, Inc.*, 2013 WL 4870839, *2 (S.D. Ala. Sept. 12, 2013) (citations omitted); *see also De Varona v. Discount Auto Parts, LLC*, 285 F.R.D. 671, 672-73 (S.D. Fla. 2012) ("diligence is the key to satisfying the good cause requirement"); *Southern Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp.2d 509, 521 (D. Del. 2010) ("the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party") (citation omitted). Without a threshold showing of diligence to warrant modification of the Scheduling Order under Rule 16(b), it is of no consequence whether Northstar would not be prejudiced by the amendment (a relevant criterion under Rule 15(a)(2)). The same goes for Huffman's arguments concerning lack of unfair surprise, futility, or dilatory motive.

## III. Conclusion.

Defendants are asking that the Rule 16(b) Scheduling Order's deadline for motions to amend parties be modified a year after its expiration, to allow them to interpose two new affirmative defenses. Defendants have not met their burden of showing "good cause" to warrant such relief, instead traveling in conclusory generalities that raise more questions than they answer. The orderly, efficient passage of lawsuits through federal courts demands that the Federal Rules of Civil Procedure be followed, and that the parties work diligently to adhere to scheduling order deadlines. To cast aside a critical Scheduling Order deadline a year after the fact on a showing as threadbare as that offered by Huffman would be to strip the Scheduling Order of any meaningful force or effect, rendering it a toothless advisory document whose prescriptions and requirements can be lightly cast aside for the haziest and most amorphous of

---

[8] *See generally Korrow v. Aaron's, Inc.*, --- F.R.D. ----, 2014 WL 3040802, *11 (D.N.J. June 30, 2014) ("Defendant bears the burden of showing good cause under Rule 16 to persuade the Court that, despite its diligent efforts, it was unable to know until long after … its deadline for seeking leave to amend its pleading, that it had a counterclaim against Korrow").

reasons.  Without an adequate showing of diligence to buttress it, the Motion to Amend Answer (doc. 49) is **denied**.

    DONE and ORDERED this 28th day of July, 2014.

                                          s/ WILLIAM H. STEELE
                                          CHIEF UNITED STATES DISTRICT JUDGE