# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **NORTHSTAR MARINE, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 13-0037-WS-C** |
| ) | |
| **MICHAEL HUFFMAN, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This matter comes before the Court on defendants' Motion for Reconsideration and Request for Hearing (doc. 72).[1]

## I.     The Challenged Order.

On July 28, 2014, the undersigned entered an Order (doc. 71) denying the Motion to Amend Answer (doc. 49), in which defendants had requested leave to interpose new affirmative defenses of statute of frauds and failure of consideration.  The July 28 Order noted that the applicable Rule 16(b) Scheduling Order fixed a deadline of June 28, 2013 for motions to amend pleadings; that this deadline had been jointly proposed and agreed to by the parties; and that defendants had waited until June 25, 2014 (some 362 days after the deadline) to move to amend their answer.  In light of those circumstances, the Motion to Amend Answer was governed not by the liberal standard of Rule 15(a), but by the stringent "good cause" standard prescribed by Rule 16(b)(4).  *See, e.g., Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("[B]ecause Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is

---

[1]     The Local Rules provide that "the court may in its discretion rule on any motion without oral argument."  LR 7.3.  After review of the Motion, the undersigned is of the opinion that oral argument would not be helpful to resolution of the straightforward matters presented; therefore, defendants' Request for Hearing is **denied**.

proper under Rule 15(a).").  "To establish good cause, the party seeking the extension must have been diligent." *Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008).

The July 28 Order explained that defendants had not established the quantum of diligence necessary to support a Rule 16(b)(4) modification of the scheduling order.  In particular, the July 28 Order reasoned that the mere "short timeline to file an Answer" and communication issues between defendants and their lawyers do not constitute good cause because they shed no light on why it took a year to identify these defenses.  Likewise, the July 28 Order rejected defendants' statement that their legal research did not illuminate the perceived viability of the statute of frauds defense until well after the deadline, simply because defendants had failed to demonstrate that, despite their diligence, such research could not have been performed sooner.  And the July 28 Order found unpersuasive defendants' explanation that "[i]t was only after depositions were taken in Philadelphia, on January 28 and 29, 2014, and in Long Island, New York, on June 2, 2014, that the facts supporting these defenses were discovered" (doc. 67, at 3-4), for the following reasons: (i) defendants did not identify what new information surfaced at these depositions; (ii) defendants did not explain why they could not have obtained such information earlier with diligence; (iii) defendants did not explain why they waited so long before taking the depositions, despite knowledge of the June 2013 deadline for amending pleadings; and (iv) defendants made no showing why they could not have moved to amend their answer after the January 2014 depositions, based on information available at that time.

Based on these and other considerations, the July 28 Order denied the motion to amend pleadings, reasoning that "Defendants have not met their burden of showing 'good cause' to warrant such relief, instead traveling in conclusory generalities that raise more questions than they answer."  (Doc. 71, at 6.)

## II.     Legal Standard for Motion to Reconsider.

Defendants now request reconsideration of the July 28 Order via a 12-page motion/brief and 34 pages of exhibits.  The threshold defect in their Motion (which is really a motion to alter or amend pursuant to Rule 59(e), Fed.R.Civ.P.) is that defendants gloss over the strict legal standard governing their motion.  A dissatisfied federal litigant is not entitled to reconsideration of anything and everything, merely because he or she disagrees with a court's ruling or thought of something else to say.  To the contrary, "[t]he only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *United States v. Marion*, 562 F.3d

1330, 1335 (11th Cir. 2009) (citation and internal marks omitted); *see also Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (similar). Authority is legion for the proposition that motions to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (citation omitted).[2] Rule 59(e) motions do not afford an unsuccessful litigant "two bites at the apple." *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985). Nor are such motions properly filed "as a kneejerk reaction by a dissatisfied federal court loser." *Lee v. Thomas*, 2012 WL 3137901, *2 (S.D. Ala. Aug. 1, 2012).[3] "They are neither appeal substitutes nor a 'dry run' to test arguments in anticipation of a forthcoming appeal." *Id.*

Defendants have identified neither newly-discovered evidence nor manifest errors of law or fact that afflict the July 28 Order. Instead, they devote the bulk of their Motion for Reconsideration to a detailed outline of the discovery process in this case, including extensive discussion of the various delays, impediments, detours, false starts, surprises, disappointments,

---

[2]     *See also Smith v. Ocwen Financial*, 2012 WL 3758378, *2 (11th Cir. Aug. 30, 2012) ("A motion for reconsideration cannot be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to the entry of judgment.") (citation omitted); *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010) (similar); *Kight v. IPD Printing & Distributing, Inc.*, 2011 WL 2015055, *1 (11th Cir. May 24, 2011) (motion for reconsideration properly denied where movant "merely attempted to relitigate old matters and presented evidence that could have been raised prior to the entry of judgment"); *Morton v. Astrue*, 2010 WL 2130613, *3 (11th Cir. May 27, 2010) ("In his motion to alter or amend judgment, … Morton merely attempted to reargue factual issues previously decided by the district court. The district court therefore did not abuse its discretion in denying the motion."); *Dyas v. City of Fairhope*, 2009 WL 5062367, *3 (S.D. Ala. Dec. 23, 2009) ("Motions to reconsider … do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted. They do not, in short, serve to relieve a party of the consequences of its original, limited presentation.").

[3]     *See also Hughes v. Stryker Sales Corp.*, 2010 WL 2608957, *2 (S.D. Ala. June 28, 2010) (rejecting notion that motions to reconsider "are appropriate whenever the losing party thinks the District Court got it wrong," but finding that they are "an extraordinary remedy" that must be "employed sparingly") (citations omitted); *Garrett v. Stanton*, 2010 WL 320492, *3 (S.D. Ala. Jan. 18, 2010) ("Far too often, litigants operate under the flawed assumption that any adverse ruling on a dispositive motion confers upon them license … to relitigate issues that have already been decided, to champion new arguments that could have been made before, and otherwise to attempt a 'do-over' to erase a disappointing outcome. This is improper.").

obstacles, hardships and inconveniences that transpired along the way. All of these facts were available to and known by defendants at the time they filed their Motion to Amend Answer; however, they neglected to present them at that time to meet their burden of showing "good cause" under Rule 16(b)(4). Defendants having chosen not to rely on these facts (or, indeed, to focus on proving up "good cause," and instead banking on the lenient Rule 15(a) standard) in originally briefing their Motion to Amend, they may not change tactics in their Rule 59(e) Motion by presenting those facts now. It's too late. The time for defendants to make a Rule 16(b)(4) showing of diligence was before their Motion to Amend was adjudicated, not after.

Because the Motion is predicated on facts, arguments and evidence that could and should have been presented earlier, defendants' Motion for Reconsideration is **denied** as an improper attempt to relitigate an adversely decided issue using previously available (but omitted) facts and arguments.

**III.    Defendants' Supplemental Showing.**

Even if this Court were to consider defendants' Motion for Reconsideration on the merits under Rule 16(b)(4) (rather than as procedurally improper under Rule 59(e)), the result would be unchanged. Again, the critical issue presented in the underlying Motion to Amend Answer is why defendants failed to do so prior to the June 2013 deadline fixed in the Scheduling Order. In their Rule 59(e) Motion, defendants go on at great length about personal, professional and logistical difficulties that marred the discovery process in late 2013 and early 2014. But those facts are not helpful, simply because they do not tend to establish diligence or good cause by defendants prior to the June 28, 2013 deadline for moving to amend pleadings. To say that defendants faced obstacles six or more months after the deadline had already expired does not tell us anything about (much less establish the necessary good cause for) why they did not meet that deadline in the first place. Simply put, defendants do not show what efforts they employed to identify and investigate all potentially viable affirmative defenses before the June 2013 deadline to which they had agreed.

To demonstrate the point, one of the new defenses that defendants now seek to add is that of statute of frauds. In their Motion for Reconsideration, defendants state that "[i]t appeared through initial conversations with Huffman that the work performed by Huffman Construction on the NRC contract and payment thereon occurred within a one year time frame," so they omitted a statute of frauds defense in their initial answer. (Doc. 72, at 2-3.) According to their

Rule 59(e) Motion, however, in reviewing documents and speaking with NRC officials prior to June 2014 depositions, "Defendants discovered that Huffman Construction's contract might have been for a five year time period," and obtained a document from NRC confirming the protracted timeframe during which NRC made payments to Huffman Construction.  (*Id.* at 7.)  Based on this information that payments occurred over a period longer than one year, defendants reason, they knew for the first time that they had a viable statute of frauds defense.

This evidence is insufficient to satisfy defendants' burden of proving that the scheduling order deadline for amending pleadings "cannot be met despite the diligence of the party seeking the extension."  *Sosa*, 133 F.3d at 1418 (citation and internal quotation marks).  Even if Huffman could not recall whether the NRC contract lasted five months or five years (itself a dubious proposition), surely he possessed (or had ready access to) banking records showing what funds Huffman Construction received from NRC and when.  Of course, no Rule 16(b)(4) good cause is present where the facts in question were or should have been known by the movant from the outset.  *See, e.g., Kendall v. Thaxton Road LLC*, 2011 WL 3903400, *5 (11th Cir. Sept. 7, 2011) (no good cause for untimely amendment where "the facts with which Kendall wished to amend his complaint were known to Kendall at the time he filed his initial complaint").[4]  It is difficult to imagine how defendants could reasonably have mistaken a five-year contract as being one for less than a year, or how defendants could not have learned the truth had they investigated with diligence at the outset of this lawsuit.  On that point, even if Huffman lacked the necessary banking records or those banking records were inadequate or unavailable (neither of which defendants have shown), defendants do not explain why they could not have simply contacted non-party NRC at the beginning of the case to obtain the relevant information about the duration

---

[4]        *See also Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp.2d 724, 735 (S.D.N.Y. 2012) ("[T]he good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline.") (citation omitted); *Ross v. American Red Cross*, 2014 WL 289430, *8 (6th Cir. Jan. 27, 2014) ("A plaintiff does not establish 'good cause' to modify a case schedule to extend the deadline to amend the pleadings where she was aware of the facts underlying the proposed amendment to her pleading but failed, without explanation, to move to amend the complaint before the deadline."); *see generally Korrow v. Aaron's, Inc.*, --- F.R.D. ----, 2014 WL 3040802, *11 (D.N.J. June 30, 2014) ("Defendant bears the burden of showing good cause under Rule 16 to persuade the Court that, despite its diligent efforts, it was unable to know until long after … its deadline for seeking leave to amend its pleading, that it had a counterclaim against Korrow").

of the contract and contract payments.  In their Rule 59(e) Motion, defendants refer to information gleaned from telephone calls with NRC representatives prior to June 2014 depositions.  Why did they not make those telephone calls in June 2013 (or earlier) to hunt down these facts?  Defendants do not say.

In short, the Court has no information before it that (i) despite diligence, Huffman lacked access to information about when Huffman Construction received payments from NRC; (ii) Huffman was unable to inquire of NRC about the duration of the contract and contract payments prior to June 2014; or (iii) neither NRC nor Huffman Construction's banking institution were willing to provide the necessary information prior to June 2014.  For all of these reasons, then, the Court concludes that even if defendants' Motion for Reconsideration were proper under Rule 59(e) (and it is not), relief would be unwarranted for want of good cause.  Defendants have not shown that the basic facts underlying their statute of frauds defense were unknown and unknowable to them – despite their diligent efforts to uncover same – prior to the June 28, 2013 deadline fixed by the applicable Scheduling Order for motions to amend the pleadings.

With respect to the failure of consideration defense, defendants' Motion for Reconsideration provides no explanation at all.  Under Alabama law, "[f]ailure of consideration is the neglect, refusal and failure of one of the contracting parties to do, perform, or furnish, after making and entering into the contract, the consideration in substance and in fact agreed on." *BSI Rentals, Inc. v. Wendt*, 893 So.2d 1184, 1189 (Ala.Civ.App. 2004) (citations omitted).  How did Northstar Marine neglect, refuse, or fail to perform under its contract with Huffman Construction?  More to the point, how is it that defendants neither knew nor could have known about such neglect, refusal or failure to perform until their June 2014 request to amend the pleadings?  Defendants' Rule 59(e) Motion neither answers nor even addresses these questions; therefore, it does not come close to establishing the requisite good cause for modification of the Scheduling Order deadline for amending pleadings to add such a defense.

## IV.    Conclusion.

For all of the foregoing reasons, defendants' Motion for Reconsideration and Request for Hearing (doc. 72) is **denied**.

DONE and ORDERED this 8th day of August, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE