# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| NORTHSTAR MARINE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 13-0037-WS-C |
| | ) |
| MICHAEL HUFFMAN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on defendant Huffman Construction, Inc.'s Motion in Limine Concerning Text Messages (doc. 89). The Motion has been briefed and is now ripe.[1]

This action for breach of contract, unjust enrichment, conversion, and the like arises from a commercial dispute between plaintiff, Northstar Marine, Inc., and defendant Huffman Construction, Inc. Northstar maintains that it recommended and facilitated Huffman Construction's selection as a direct contractor for National Recovery Corporation ("NRC") in the BP oil spill cleanup in June 2010, in exchange for Huffman Construction's promise to pay Northstar a finder's fee of 10% of its gross receipts from NRC. Huffman Construction counters that Northstar's account is pure fiction, and that no such promises were ever made. This action is set for non-jury trial to commence on November 19, 2014.

Defendant's Motion in Limine relates to a package of 29 photographs of text messages on a cell phone display screen that Northstar produced to Huffman Construction on October 18,

---

[1] Plaintiff, Northstar Marine, Inc. filed a Motion for Leave to File Surreply (doc. 94), along with a short two-page proposed Surreply. (*See* doc. 94.) Although sur-replies are disfavored in this District Court, they are not forbidden. Here, plaintiff offers the sur-reply for the purposes of (i) responding to new arguments raised by defendant for the first time in its reply brief (which diverges substantially from the theory of relief espoused in the original Motion), and (ii) providing new information concerning events that have transpired within the last week. For cause shown, the Court in its discretion **grants** the Motion for Leave to File Surreply and will consider the two-page brief appended thereto as Exhibit A.

2014, barely a month before trial and well after the formal discovery cutoff date of June 30, 2014.[2] In its Motion in Limine, Huffman Construction objects that it was prejudiced because the cell phone belongs to plaintiff's witness Warren Claybar, whom Huffman Construction had deposed way back in January 2014. As Huffman Construction puts it, Northstar "should have produced [the text messages] at or before the Claybar deposition in January, 2014, when [Huffman Construction] counsel would have had the opportunity to examine Mr. Claybar about them." (Doc. 89, at 2.) Huffman Construction further objects that Claybar made no mention of these text messages during his January 2014 deposition. In response, Northstar counters that the subject cell phone actually belongs to plaintiff's witness Rian Glasscock, whose deposition was never taken by Huffman Construction until November 2014 (by informal agreement of the parties), well after the discovery deadline and after production of the 29 photographs.[3]

In its Reply, Huffman Construction shifts gears on the theory animating its Motion in Limine. Whereas the original Motion was couched in terms of prejudice because defendant deposed Claybar without the benefit of those text messages, the Reply simply faults Northstar's counsel for not producing the text messages earlier and offers a generic observation that "[d]efendant has been deprived of whatever useful information (if any) is contained in these texts since January." (Doc. 93, at 2.) Nowhere does Huffman Construction explain what it would have done with those text messages had they been produced earlier or how their untimely

---

[2] Northstar asserts that the cell phone in question was available for inspection by Huffman Construction at a mediation held on October 1, 2014, and that Northstar produced "photographs of certain text messages" to Huffman Construction at that time. (Doc. 94, Exh. A, ¶ 7.) Be that as it may, the fact remains that these items were produced well after the discovery deadline fixed by Magistrate Judge Cassady.

[3] The backstory is, apparently, that the parties had set Glasscock's deposition for January 2014, but that Glasscock was forced to cancel his appearance at the last minute because of a *bona fide* family emergency. Northstar maintains that it had intended to produce (or at least notify opposing counsel about) the phone and texts at that January 2014 deposition of Glasscock, had it happened. For whatever reason, Huffman Construction did not re-notice Glasscock's deposition prior to the close of discovery, and the Glasscock phone sat in a deposition folder in Northstar's custody and control until then, without ever being produced. Given this set of facts and circumstances, the Court has no reason to believe that Northstar acted in bad faith or with an improper purpose in failing timely to produce the cell phone images; rather, the omission appears to be the product of an inadvertent oversight in the wake of Glasscock's canceled (and, until very recently, never rescheduled) deposition.

production has been to Huffman Construction's detriment. In a Surreply (doc. 94), Northstar points out that defendant took the deposition of Glasscock (the owner of the phone) last week, during which time he was questioned about those text messages. Essentially, then, Northstar posits that the Motion should be denied on a "no harm, no foul" rationale.

Although neither side's briefs recite the governing legal standard, the Motion in Limine is properly evaluated under Rule 37(c)(1), Fed.R.Civ.P. That rule provides, in relevant part, as follows: "If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … at a trial, ***unless the failure was substantially justified or is harmless***." Rule 37(c)(1) (emphasis added). "The burden of establishing that a failure to disclose was substantially justified or harmless rests with the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 Fed.Appx. 821, 824 (11th Cir. Mar. 9, 2009) (citation omitted). Northstar unquestionably possessed and should have produced the cell phone / text messages to Huffman Construction back in January. While that omission appears to have been unintentional or the product of confusion resulting from the eleventh-hour cancellation of Glasscock's original deposition setting, thereby refuting any inference of bad faith on Northstar's part, these circumstances do not constitute substantial justification. Accordingly, the Motion in Limine turns on an analysis of whether the untimely production was harmless for purposes of Rule 37(c)(1).

Northstar has made a substantial showing of harmlessness with regard to the challenged text messages. After all, Huffman Construction received those materials a month before trial (such that defendant has had sufficient time to tailor its trial strategy and trial presentation to account for same). Moreover, Huffman Construction had a full and fair opportunity to depose the owner of the cell phone from which the messages were drawn (Glasscock) after the production occurred, and presumably was able to ask Glasscock anything it wanted to know about those text messages. There is no indication in the record – and certainly, Huffman Construction has never suggested – that defendant could or would have proceeded any differently had the text messages been produced in January 2014 rather than October 2014.[4]

---

[4] On this point, it is also relevant to observe that nothing in those 29 pages of text messages appears to be earth shattering or game changing. On their face, most of those text messages appear to relate not to any deal or contract arrangement between Northstar and Huffman Construction, but rather to the desire of Glasscock, Claybar and Moor to be paid by
(Continued)

Simply put, no perceptible prejudice or unfair surprise accrued to Huffman Construction by virtue of Northstar's untimely production of the Glasscock phone and text messages. Huffman Construction was able to depose Glasscock fully about those materials, and there is no indication and no reason to believe that Huffman Construction's trial preparations were compromised or impaired by the belated disclosure.

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiff's Motion for Leave to File Surreply (doc. 94) is **granted**, and the Surreply appended to that Motion as Exhibit A is considered in evaluating defendant's Motion in Limine; and

2. Defendant's Motion in Limine Concerning Text Messages (doc. 89) is **denied** because the untimely production of information concerning the subject text messages retrieved from Rian Glasscock's cell phone was harmless, such that exclusion is not warranted under Rule 37(c)(1), Fed.R.Civ.P.

---

Huffman Construction. Of course, the existence (or lack thereof) of any contractual relationship between Glasscock/Claybar/Moor and Huffman Construction to split profits from the BP oil spill is a question distinct from (and potentially irrelevant to) the principal factual question animating this lawsuit, to-wit: whether Huffman Construction agreed to pay 10% of its NRC gross receipts to Northstar as a finder's fee for Northstar's assistance in procuring its direct contract with NRC.

For example, there are messages purportedly from Glasscock to Michael Huffman bearing contents like "Any chance you have done anything with our BP s**t" and "Whats the update." There are messages purportedly from Claybar to Glasscock saying "Texted him monday. Have not heard anything" and "Reply from huffman … 'still waiting on payments.'" There is a message purportedly from Michael Huffman reading, "Your understanding is wrong NRC has mysteriously lost alot of my invoices. When I get this resolved I will let everyone know what the f**ks going on." There are messages, apparently between Claybar and Glasscock, in which they appear to speculate as to what settlement amount per person would be fair or likely. (*See* doc. 89, Exh. A.) Again, the most logical interpretation of these messages is that they relate to contractual arrangements (or lack thereof) between Glasscock/ Claybar/ Moor and Huffman Construction, rather than any arrangements between Northstar and Huffman Construction. If that construction is correct, then most of these messages may not even be relevant to the Northstar litigation, much less harmful to Huffman Construction's position at trial. The only message that appears to reference Northstar is cryptic. It is from Claybar and reads, "Did phil ever talk to huff about how to collect balance???" Even assuming that "phil" is Phil Risko of Northstar, this message hardly appears to be a smoking gun for either side. The point is that these exhibits do not appear to contain the sort of explosive information whose delayed disclosure would result in unfair ambush to the opposing party; therefore, any risk of harm to Huffman Construction resulting from such delay is attenuated here.

DONE and ORDERED this 13th day of November, 2014.

                                                  s/ WILLIAM H. STEELE
                                                  CHIEF UNITED STATES DISTRICT JUDGE